UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA WOODSON, | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | |
| v. | Civil No. 1:19-cv-14572 |
| ATLANTIC CITY BOARD OF EDUCATION, JAMES KNOX, NATIONAL ASSOCIATION OF ELEMENTARY SCHOOL PRINCIPALS, | **OPINION** |
| *Defendants*. | |

This matter comes before the Court on separate Motions for Summary Judgment by Defendants James Knox and Atlantic City Board of Education [Dkt. No. 85] and Defendant National Association of Elementary School Principals [Dkt. No. 86]; and Plaintiff's Motion for Summary Judgment [Dkt. No. 87]. This Court has considered the parties' written submissions pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, the Court will grant Defendants' Motions for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

**I.   Procedural History**

This case concerns the alleged copyright infringement of Linda Woodson's ("Plaintiff") work—a report titled "At Risk for More than Academic Failure" (the "Article"). Second Am. Compl. ¶ 25, Ex. A [Dkt. No. 32] (the "Operative Complaint"). Plaintiff initially filed a complaint on July 1, 2019, against the Atlantic City Board of Education ("ACBOE"), James Knox ("Knox"), and the National Association of Elementary School Principals ("NAESP") (collectively "Defendants"), for Copyright Infringement (Count I), Vicarious Copyright

1

Infringement (Count III), and Contributory Infringement (Count IV).[1] [Dkt. No. 1]. Defendants Knox and ACBOE filed a Motion to Dismiss Plaintiff's Complaint [Dkt. No. 9], which was followed by Defendant NAESP's Motion to Dismiss. [Dkt. No. 11]. In response, Plaintiff filed an opposition and Cross-Motion to Amend her Complaint (the "first motion to amend"). [Dkt. Nos. 14, 15]. This Court granted both motions to dismiss and denied the first motion to amend. *See Woodson v. Atl. City Bd. of Educ.*, No. CV 19-14572, 2020 WL 1329918, at *7 (D.N.J. Mar. 23, 2020). The Court, however, permitted Plaintiff thirty (30) days to file a Second Motion to Amend consistent with this Court's March 23, 2020 Opinion. *See id.*

In this Court's March 23, 2020 Opinion, it found that Plaintiff's proposed (first) amended complaint plausibly alleged facts supporting her copyright ownership but failed to plausibly allege that the statute of limitations period on her copyright claim was tolled by the discovery rule. *Id.*, 2020 WL 1329918, at *4, *7. Plaintiff moved to amend her complaint to cure the deficiency. [*See* Dkt. No. 21] (the "Second Amended Complaint").[2] She submitted that her proposed amendment "states sufficient facts to allow Woodson to avail herself of the 'discovery rule' adopted in *Graham I*." [Dkt. No. 21, p. 5 of 8].

Plaintiff's Second Amended Complaint added that she first learned of Knox's publication in 2018 and "did not discover, nor in the exercise of reasonable diligence could or should have discovered, the basis for her claim against the Defendants" prior to 2018. Second Am. Compl. ¶ 39 [Dkt. No. 21]. In 2018, Plaintiff discovered the Article upon conducting a Google search of

---

[1] Plaintiff's Complaint contained no "Count II." In the Second Amended Complaint, the three claims are now properly identified in numerical order as Count I, II, and III. [*See* Dkt. Nos. 21, 32].

[2] Plaintiff refers to both Documents 21 and 32 as the Second Amended Complaint. However, for the Court's purposes, it will refer to Document 21 as the Second Amended Complaint and Document 32 as the Operative Complaint.

James Knox. *Id*. Knox never told Plaintiff about the "Principal" publication of her article but did send the article as an attachment in an email to all of the New York Avenue School faculty. *Id.* at ¶¶ 41-42. The email subject line was "FW: Message from KMBT_600[,]" and the message contained in the body of the email stated: "Principal's Magazine article....Enjoy!!!" *Id.* at ¶ 42, Ex. F.

Plaintiff alleged that she often received emails from Knox (approximately three to five times a day), and "consistent with her email practice, Plaintiff did not read the attachment to Knox's January 4, 2011 email." *Id.* at ¶ 47. No one at work, including Knox, ever notified Plaintiff that "the January 4, 2011 email and its attachment had any connection to her." *Id.* at ¶ 48.

The Court's December 18, 2020 Opinion addressed the issue of "whether Plaintiff's Second Amended Complaint provided facts sufficient to satisfy the discovery rule, so as to toll the statute of limitations on her claims under the Copyright Act, 17 U.S.C. § 101, *et seq*." *Woodson v. Atl. City Bd. of Educ.*, No. CV 19-14572, 2020 WL 7417818, at *3 (D.N.J. Dec. 18, 2020). In regard to Knox's January 4, 2011 email, the Court found it was not clear that a reasonable person in the Plaintiff's position would have perceived Knox's email to contain sufficient reason to investigate whether they may have suffered an injury. *Id.*, 2020 WL 7417818, at *5. Thus, the email was insufficient to start the limitations clock. Accordingly, the Court then granted Plaintiff's Second Motion to Amend. *See id.* Plaintiff timely filed an amended complaint, which she titled "Second Amended Complaint". [Dkt. No. 32] (the "Operative Complaint"). The parties then proceeded to conduct additional discovery and filed the instant Motions for Summary Judgment.

**II.    Factual Background**

Plaintiff was employed by Defendant, ACBOE, as a teacher at the New York Avenue School. [Dkt. No. 1 ¶ 23]. Defendant Knox is the school's principal. [*Id.*]. "In 2010, Knox ... asked Plaintiff to 'facilitate the application process' for the Panasonic National School Change Award, an academic award;" his email stated:

> I reviewed the award criteria [sic] and believe our school can apply with a great chance of attaining this award. I would like you to facilitate the application process this year for us. Feel free to develop a small committee to assist you with this project. I pray you are willing to take on this project. Please advise.

Operative Compl. ¶ 24, Ex. E. According to the Operative Complaint, Plaintiff prepared the required written materials (Plaintiff's Work) on her own time, which "[n]o Defendants edited, created, guided or gave instruction to Plaintiff about ...." *Id.* at ¶¶ 25-26.

Knox later submitted and published the Article "At Risk for More Than Academic Failure" in the January/February 2011 edition of "Principal." *Id.* at ¶ 31. "Principal" is a professional journal published by Defendant National Association of Elementary School Principals ("NAESP"). Plaintiff alleges that Knox "used the application to the Panasonic National School Change Awards in its entirety in 'his' 'At Risk for More Than Academic Failure' article[,]" and Plaintiff received no credit in the edition of "Principal" for the article.[3] *Id.* at ¶¶ 31, 37.

---

[3] Plaintiff also raises for the first time in her Motion for Summary Judgment that "Defendants willfully, contributorily and vicariously infringed upon 'The Work' of Plaintiff on two separate occasions." [*See* Dkt. No. 87 at 4]. The first purported incident of copyright infringement was entitled "Moving Beyond Our Walls." Plaintiff claims to have first learned of the first purported copyright infringement during the discovery of this claim. [*See* Dkt. No. 90 at 2, n. 1]. Because Plaintiff does not include the purported newly discovered first infringement in any of her pleadings, the Court only addresses the second alleged infringement concerning the work entitled "At Risk for More Than Academic Failure." Plaintiff has not amended her pleadings to incorporate allegations pertaining to the first incident of copyright infringement.

Plaintiff's Article in "Principal" was available for display from NAESP's website to persons able to access this publication from 2011 and after 2018. *Id.* at ¶¶ 34-35. Plaintiff is not a subscriber to NAESP's website nor to "Principal." *Id.* at ¶ 33.

Plaintiff alleges she did not discover, nor in the exercise of reasonable diligence could or should have discovered, the basis for her claim against the Defendants until 2018 when she first learned of the Article's publication by conducting a Google Search for "James Knox," which disclosed Plaintiff's Article in "Principal" attributed to Knox. *Id.* at ¶ 39. Knox never told the Plaintiff about his publication of her Article in "Principal" but did distribute this information on January 4, 2011 as an attachment to an email to all faculty at the New York Avenue School that said in the subject line, "Message from KMBT_600[,]" and included the message "Principal's Magazine article…Enjoy!!!" *Id.* at ¶¶ 42, 44.

Plaintiff alleges that, consistent with her email practice, she never opened the January 4, 2011 email because there was no indication that it was important for faculty to read by the subject line or even that the email contained an attachment of Plaintiff's Article, which was labeled SKMBT_60011010322341.pdf. *Id.* at ¶¶ 42-43, 47. Further, neither Knox nor anyone else at Plaintiff's work ever alerted Plaintiff to the January 4, 2011 email. *Id.* at ¶ 48.

### III.    Legal Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including

5

depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he party moving for summary judgment under Fed. R. Civ. P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden by producing evidence showing the absence of a genuine issue of material fact or by showing there is no evidence in support of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

"A nonmoving party may not 'rest upon mere allegations, general denials or ... vague statements….'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d

884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

IV. **Analysis**

   a. **Plaintiff's Claims for Copyright Infringement are Barred by the Three-Year Statute of Limitations**

The issue before this Court is whether new discovery shows that Plaintiff had direct knowledge that Knox was working on an article for Principal Magazine in 2011, which would serve to bar Plaintiff's claims under the three-year statute of limitations period. Generally, copyright claims accrue "at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge of all the facts could survive a motion to dismiss for failure to state a claim." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011) ("*Graham II*"). The statute of limitations under the Act is three years. 17 U.S.C. § 507(b).

As discussed in this Court's earlier Opinion, Plaintiff initiated the present action almost nine (9) years following Defendants' alleged infringement on Plaintiff's copyright in "January/February 2011." *Woodson*, 2020 WL 1329918, at *4. On the face of Plaintiff's original complaint and her first amended complaint, Plaintiff's claims were undisputedly outside of the

7

limitations period. Plaintiff now claims "[she] is not out of time to bring this claim because the Court has already held that the federal discovery rule is applicable and supersedes 17 U.S.C. 507 and its three-year statute of limitations." [Dkt. No. 91 at ¶ 9].

In the Court's December 18, 2020 Opinion, it found Defendants had not met their burden to show that Knox's email containing the Article put Plaintiff on inquiry notice. Thus, the Court held "it is not clear that a reasonable person in the plaintiff's position would have perceived Knox's email to contain a reason to investigate whether they may have suffered an injury." *Woodson*, 2020 WL 7417818, at *5. However, information developed in the course of discovery revealed that Plaintiff provided Knox with the narrative for the article in Principal Magazine in July 2010 and demonstrates that Plaintiff was, in fact, placed on inquiry notice and had a reason to investigate whether she suffered an injury.

The discovery rule is an equitable doctrine, which the Third Circuit held "comports with the text, structure, legislative history and underlying policies of the Copyright Act. Thus ... the federal discovery rule governs the accrual of civil claims brought under the Copyright Act." *William A. Graham Co. v. Haughey*, 568 F.3d 425, 437 (3d Cir. 2009) ("*Graham I*"). In *Graham II*, the circuit court explained that "[t]he rule is an exception to the usual principle that the statute of limitations begins to run immediately upon accrual regardless of whether or not the injured party has any idea what has happened to him." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011). The discovery rule will toll the statute of limitations until "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" *Graham I*, 568 F.3d at 433 (quoting *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008)).

In applying the discovery rule, the Court must ask whether Plaintiff Woodson, "in the exercise of reasonable diligence, should have known of the basis for [her] claims," and that "depends on whether [she] had 'sufficient information of possible wrongdoing to place [her] on 'inquiry notice' or to excite 'storm warnings' of culpable activity.'" *Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1325 (3d Cir. 2002)). "The test for storm warnings is 'objective,' based on what a reasonable person in the plaintiff's position would have perceived." *Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. CIV.A. 12-2061, 2015 WL 1279502, at *3 (E.D. Pa. Mar. 20, 2015) (quoting *Benak ex rel. All. Premier Growth Fund*, 435 F.3d at 400). There is no exhaustive list as to what constitutes a storm warning. *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001). The burden is on Defendants to show that any storm warnings were present; if Defendants meet this burden, Plaintiff has the burden to show she "exercised reasonable due diligence and yet [was] unable to discover [her] injuries." *Graham I*, 568 F.3d at 438 (quoting *Benak ex rel. All. Premier Growth Fund*, 435 F.3d at 400).

Here, Defendants have met their burden. Defendants have adduced evidence of Plaintiff's email correspondences in July 2010 with Knox, which demonstrates that Plaintiff had direct knowledge that Knox was working on an article for Principal Magazine. On August 2, 2022, Defendant ACBOE served supplemental responses to discovery requests in this case. [*See* Dkt. No. 86, Ex. 2]. In the supplemental responses, Knox certified the following:

> ANSWER: [O]n July 1, 2010, I[4] sent all New York Avenue staff an email with the subject matter: Publishing opportunity with Principal Magazine. This email that was forwarded was from Kaylen Tucker that asks that I submit an article for a new column in NAESP's Principal magazine. (See Bates Stamped documents R&R Woods 147-148.) After receiving this article, on July 6, 2010 at 10:58 a.m. you[5]

---

[4] "I" in this context refers to Defendant James Knox.
[5] "You" in this context refers to Plaintiff Linda Woodson.

9

> sent me an email in response that stated, "Attached is the narrative for the article." However, there was no attachment to this email. (See Bates Stamped document R&R Woodson 165 attached.)
>
> On July 6, 2010 at 11:49 a.m. you responded to my email with the subject matter: Publishing opportunity with Principal magazine. The email from you states:
>
> "Mr. Knox,
>
> This was not the correct "jump drive." I will continue to search for the correct one. I also attempted to see if I had saved the document on the computer I use in the classroom. Unfortunately, the monitor(s) are not working when connected to that particular CPU, I tried substituting monitors twice." (See Bates Stamped documents R&R Woodson 167-169.) I responded to this email. (See Bates Stamped documents R&R Woodson 170-172.)
>
> On July 8, 2010 at 6:06 p.m. you responded to my email, "Found it" and attached Meaningful school change is determined by the academic and social outcomes manifested by the students as a word document. (See Bates Stamped documents R&R Woodson 173-186.)

[*See* Dkt. No. 86 at 17-18, Ex. 2]. Moreover, on January 4, 2011, Knox emailed a copy of the published Article to the New York Avenue Staff in which the body of the email contained the language "Principal's Magazine article…Enjoy!!" [*See* Dkt. 86 at 18, Ex. 3].

Despite evidence of the July 2010 email correspondences, "Plaintiff does not recall sending an email that stated: 'Attached is the narrative for the article.'" [Dkt. No. 90 at ¶ 9]. Plaintiff claims it is not her email address on the email in question. [*Id.*]. Although the July 6, 2010, email at 10:58 am stating "[a]ttached is the narrative for the article," does not include an email address indicating where the email originated from, it does include a signature consistent with the Plaintiff's other email correspondences in July 2010. [*See* Bates Stamped documents R&R Woodson 165-173]. Additionally, as mentioned above, the Plaintiff attached the narrative for the article in the July 8, 2010, email not the July 6, 2010, email.[6]

---

[6] The July 8, 2010, email attaching the narrative for the article includes Plaintiff's email address and signature.

Defendants continue to argue Plaintiff clearly discovered, or at least should have discovered, her alleged cause of action against the Defendants well within the statute of limitations. [Dkt. No. 86 at 19; Dkt. No. 85 at 9]. In the Court's December 18, 2020, Opinion, before discovery revealed that Plaintiff had direct knowledge of the article opportunity for Principal Magazine, this Court found:

> the January 4, 2011, email was not a storm warning based on the facts that the email did not reference Plaintiff's Work or the Application for which it was used. In fact, the email was not directed at the Plaintiff, but sent in a chain to all New York Avenue staff, with an unrelated subject line: "FW: Message from KMBT_600[.]" The body of the email read: "Principal's Magazine article....Enjoy!!!" Even the attachment (the Article itself) is not identified in a suspicious manner; instead, the title of the attachment is "SKMBT_60011010322341." [Dkt. No. 21-1, Ex. F, attached to the Second Am. Compl.]. According to the Second Amended Complaint, Plaintiff never opened this email attachment. [Second Am. Compl. ¶¶ 43, 47].

*Woodson*, 2020 WL 7417818, at *4. However, the Court now finds the new July 2010 discovery sufficiently put Plaintiff on inquiry notice.

First, the July 2010 emails specifically reference Principal Magazine in the subject matter. Despite the fact the email was not directed to Plaintiff but sent in a chain to all New York Avenue staff, Plaintiff emailed Knox three times in the email thread, attaching and sending the narrative for the article. [*See* Bates Stamped documents R&R Woodson 147-175].

As the Court previously found in the December 18, 2020 Opinion, "[t]he mere fact that a copyright owner has notice that another person also possessed its copyrighted material and may find it useful to copy should not and does not by itself constitute a storm warning of possible infringement." *Graham I*, 568 F.3d at 440. However, based upon the newly discovered July 2010 correspondences, a storm warning existed in this case because Plaintiff was on inquiry notice that Knox would incorporate her work when she sent him the narrative for the article.

11

Furthermore, whether the email at issue qualifies as a storm warning, is an objective inquiry—one that requires evaluating the facts "from the perspective of a detached, dispassionate observer, not from the subjective perspective of the individual involved in the case." *Grant Heilman Photography, Inc.*, 2015 WL 1279502, at *11; *see also Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001).

Based upon the facts, the Plaintiff had "sufficient knowledge of possible wrongdoing to satisfy inquiry notice or to excite storm warning of culpable activity." *Benak ex rel. All. Premier Growth Fund*, 435 F.3d at 400. Moreover, Plaintiff put herself in the "storm" when she responded to Knox's email under the subject matter labeled "Publishing opportunity with Principal Magazine" and provided the narrative article for incorporation.

Once Defendants establish "storm warnings" in pressing their affirmative defense, "the burden shifts to the plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries." *Id.*, 435 F.3d at 400-01 (quoting *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001); *see In re DaimlerChrysler AG Sec. Litig.*, 269 F.Supp.2d 508, 513 (D. Del. 2003)). "Whether the plaintiffs exercised reasonable diligence is both a subjective and objective inquiry." *Id.*, 435 F.3d at 401 (quoting *DaimlerChrysler,* 269 F.Supp.2d at 513 (citing *Mathews,* 260 F.3d at 252)). If the plaintiff has not shown such diligence, the knowledge they would have acquired through investigation is imputed to them. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1326 (3d Cir. 2002) ("'Once on inquiry notice, plaintiffs have a duty to exercise reasonable diligence to uncover the basis for their claims, and are held to have constructive notice of all facts that could have been learned through diligent investigation during the limitations period.'") (quoting *Gruber v. Price Waterhouse*, 697 F. Supp. 859, 864 (E.D. Pa. 1988), *aff'd*, 911 F.2d 960 (3d Cir. 1990)).

Because the Defendants here established the existence of a storm warning by showing Plaintiff had direct knowledge that Knox was working on an article for Principal Magazine and provided the content for the article, the burden shifted to the Plaintiff to show she exercised reasonable due diligence to discover the infringement. Based upon the discovery, it is evident that the Plaintiff did not exercise reasonable diligence to discover the copyright infringement. Plaintiff had reason to know Knox was going to incorporate the Article in Principal Magazine when she emailed him on July 6, 2010, with the message "[a]ttached is the narrative for the article." Although this email did not actually attach the narrative, Plaintiff later provided Knox with the narrative on July 8, 2010. Because Plaintiff provided Knox with the narrative for the article, she had reason to investigate and email Knox requesting a copy of the publication in 2011. Furthermore, as Plaintiff revealed in her Operative Complaint, "Plaintiff first learned of the Article's publication in 2018 when she conducted a Google search for 'James Knox[.]'" Operative Compl. ¶ 39 [Dkt. No. 32]. Through reasonable due diligence, Plaintiff could have Google searched "James Knox" back in 2011 to discover the Article's publication. The due diligence required to discover Knox's publication was not arduous or unduly burdensome.

In light of the new information adduced by Defendants, it is clear that a reasonable person in the Plaintiff's position would have reason to investigate whether she may have suffered an injury and, as a result, Plaintiff has not shown she exercised reasonable due diligence. Therefore, the July 2010 email correspondences are sufficient to start the limitations clock, and Plaintiff is barred from bringing her claims.[7]

---

[7] Because Plaintiff's copyright infringement claims are barred by the three-year statute of limitations, Plaintiff is not entitled to damages. Statute 17 U.S.C. § 507(b) bars recovery on "any claim for damages that accrued more than three years before commencement of suit." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

### b. Rule 11 Sanctions are not Appropriate in this Matter Before the Court

In addition to Summary Judgment, Defendants Knox and ACBOE requests Rule 11 sanctions. "It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x. 174, 185 (3d Cir. 2008) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 201 n. 6 (3d Cir. 2008)). "Although a *pro se* plaintiff is not shielded from Rule 11 sanctions, 'in considering whether to impose Rule 11 sanctions, a court may take into account a *pro se* plaintiff's status as someone who is untutored in the law.'" *Wong v. Bank of New York*, No. 14-5212, 2016 WL 1597309, at *3 (D.N.J. Apr. 21, 2016) (quoting *Lai v. Dist. V-C Ethics Comm.*, No. 06-2661, 2006 WL 3677933, at *4 (D.N.J. Dec. 11, 2006)).

"Moreover, the Court of Appeals for the Third Circuit has repeatedly advised that [R]ule 11 sanctions are to be imposed only under exceptional circumstances." *Id.* (quoting *Briehler v. Am. Cont'l Prop. of New Jersey, Inc.*, No. 89-4761, 1991 WL 117801, at *6 (D.N.J. June 13, 1991)). In the instant matter, the Court does not find that the filing of Plaintiff's Operative Complaint warrants the imposition of sanctions. As such, the Court declines to do so.

### V. Conclusion

For the foregoing reasons, Defendants' Motions for Summary Judgment [Dkt. Nos. 85, 86] will be granted; the request by Defendants Knox and ACBOE seeking Rule 11 sanctions [Dkt. No. 85] will be denied; and, Plaintiff's Motion for Summary Judgment [Dkt. No. 87] will be denied.

An appropriate Order shall issue.

Dated: July 27, 2023

                <u>/s/ Joseph H. Rodriguez</u>
                Honorable Joseph H. Rodriguez, U.S.D.J.